UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 1/11/2016

GEORGE MARTINEZ,

                Petitioner,

v.

MICHAEL CAPRA,
Superintendent, Sing Sing Correctional
Facility,

                Respondent.

No. 13-CV-3657 (RA) (RLE)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

    In this petition for a writ of habeas corpus, Petitioner George Martinez challenges his conviction for burglary and criminal possession of stolen property in connection with a 2006 burglary of a Bronx apartment.[1] He contends that his trial attorney was ineffective for failing to correct his misunderstanding of the law of accomplice liability and the favorability of the prosecution's plea offer. In particular, Petitioner asserts that his counsel did not correct his misimpression that he could not be convicted of burglary when he did not physically enter the apartment and that for that reason, he was unwilling to plead guilty. This ineffective assistance of counsel, Martinez asserts, resulted in a "swift[], and not surprising[]" guilty verdict after trial and subsequent—and significantly more severe—sentence. Petr.'s Objections to Report and Recommendation at 2. After Magistrate Judge Ronald L. Ellis issued a Report and Recommendation (the "Report" or "Rpt.") recommending that this Court deny the Petition, Petitioner filed objections. For the following reasons, the Court finds Petitioner's objections

---

[1] Counsel for Petitioner acted pro bono in this matter. The Court is grateful for pro bono counsel's superb advocacy.

unpersuasive and adopts the thorough and well-reasoned Report.[2] The Petition is denied.

## BACKGROUND

The Court assumes the parties' familiarity with the facts and procedural history underlying the Petition. Only those facts necessary to resolve Petitioner's objections are set forth here or in the discussion below.

### I.  Factual Background

In April 2007, Petitioner was tried before a jury for the burglary of an apartment at 1580 Theriot Avenue in the Bronx, New York (the "Apartment"). A003, A009, A218–19. The evidence at trial included Petitioner's written and videotaped statements "in which he admitted that along with [his accomplice], he carried stolen merchandise to his apartment." A219. Petitioner's principal defense was that he never entered the Apartment and was unaware that a burglary was taking place. A229. In light of this defense, the state court instructed the jury, over Petitioner's objection, that it could convict Petitioner of burglary if he acted in concert with another as an accomplice. A028–29, A228. On May 3, 2007, Petitioner was convicted of burglary in the second degree and criminal possession of stolen property in the fourth degree. A003. He was subsequently sentenced as a persistent violent felony offender to seventeen and one-half years to life. A009.

In July 2008, Petitioner brought a motion in state court pursuant to New York Criminal Procedure § 440.10 that sought to challenge these convictions due to his trial counsel's ineffectiveness. *Id.* In November 2009, the Supreme Court of New York, Bronx County held a hearing at which the court considered the testimony of Petitioner, trial counsel Peter Cervini ("Trial

---

[2] Although the Court concurs with the Report that Petitioner's counsel was not ineffective and that, even if he was, Petitioner was not prejudiced, this Opinion does not address Petitioner's contention that he would have accepted the State's plea offer if he had received different or additional advice from trial counsel. *See* Report at 21–23.

Counsel" or "Counsel"), and the prosecutor from Petitioner's trial, Assistant District Attorney ("ADA") April Cohen. A011.

Petitioner testified on November 12, 2009. A042, A050. He claimed that, in light of the fact that he never entered the apartment, Trial Counsel "promise[d him] that [he] would not be convicted of burglary" and that "[t]he most [he] could do was two years" on the stolen property charge. A058–59, A077. Petitioner also asserted that Trial Counsel did not urge him to take the State's plea offer of five and one-half to eleven years until the eve of trial and even then did not adequately explain the offer's benefits. A061–62. He found "that very confusing or strange," he claimed, because after months of getting what he viewed as "good information," all of a sudden, Trial Counsel was telling him that if he took the plea, he would "dance at his daughter's wedding," but if he did not, he would "spend [his] life in jail." A062–65. Had he been properly advised that he "could be found guilty even if [he was] not in the apartment," he claimed, he "would have accepted the five and a half." A059.

On cross examination, Petitioner admitted to lying under oath to the grand jury about his involvement in the robbery. A084. He was also questioned about his prior convictions, A096–98, and conceded that he had previously given false personal information to law enforcement, A098. In addition to raising credibility questions, Petitioner's testimony undermined his allegations of ineffectiveness. Among other things, he admitted that the attorney who had represented him pre-indictment, Katherine Burton, informed him that he could face life in prison if convicted at trial "even if [he] never stepped foot inside the apartment" and that although Burton advised him not to testify before the grand jury, he did so anyway, because he "didn't agree with what she was telling [him]." A075–76.

Trial Counsel also testified at length about the advice he provided to Petitioner. Although

he could not specifically recall his conversations with Petitioner, A154–55, Counsel maintained that, as with all his clients, he "would have" explained the elements of each charge in Petitioner's indictment to him, which here, would have included advice that the prosecution had to prove "that [Petitioner] either alone or aiding and abetting, acting in concert with somebody else, . . . burglarize[d] this apartment." A153–55. Nevertheless, Trial Counsel testified that Petitioner consistently focused on the fact that he was never in the Apartment. A157. In Counsel's view, Petitioner "thought that matter[ed]." A158. Indeed, when asked whether Martinez "thought he couldn't get convicted of burglary if he hadn't been inside the dwelling," Trial Counsel responded, "that's absolutely what he thought." A157. However, when asked later in his testimony whether it was Petitioner's "understanding all up through his sentencing" that he was not guilty because he had not entered the Apartment, Trial Counsel stated, "I don't know what his understanding was but that's his words. He felt he wasn't guilty of burglary because he was never in the Apartment and, okay that's a reasonable layman's assumption." A188–89. Upon further questioning about if he told Petitioner "that he was mistaken in his laymen's view," Trial Counsel clarified his testimony by stating: "Well, I'm sure we discussed that fact. I'm sure I discussed with him the fact that [if] he aided or abetted someone to go into the apartment that he could be liable for their actions . . . ." A190.

With respect to the plea offer, Trial Counsel testified that he initiated the plea bargaining process, sought a plea every stage of the case, and "basically begg[ed] the prosecutor [to] give [Petitioner] a break." A155, A164–65, A168. He recalled that shortly before trial, he told Petitioner that the State's offer of five and one-half to eleven years was "something you can't throw down," A155, that he "[had] to take this offer," A167, and that, despite his best efforts, he could not convince Petitioner to accept the plea, see A166–69, A191–92. Counsel warned

4

Petitioner that if he was convicted of burglary, his daughters will "visit you in prison for the rest of your life," A191, and that "it's not worth the risk," A192. ADA Cohen corroborated Trial Counsel's testimony about his efforts to obtain a plea and convince Petitioner to accept it. A024–27.

On June 11, 2010, after considering the testimony and reviewing post-hearing briefing, the state court denied Petitioner's motion. A017. The court concluded that Counsel "worked hard to obtain a favorable plea offer," A010, "did know the law, did not misrepresent it to the defendant, and adequately counseled him as to the law, the plea, and the risks of not accepting the plea," A015–16. The state court credited Trial Counsel's testimony and refused to credit Petitioner's testimony with the exception of his statements about Burton's legal advice and his criminal history. A013–15. In concluding that Petitioner testified falsely, the court pointed to his admitted perjury before the grand jury, multiple convictions, and history of inconsistent statements to law enforcement. A013–14. Regarding accomplice liability, the court explicitly "decline[d] to credit the testimony of the [Petitioner] that he never knew (before or during Cervini's representation) that he could be liable for Burglary even though he never physically entered the apartment." A014. It also declined to credit Petitioner's testimony as to "his familiarity with and understanding of the concept of 'acting-in-concert,'" in light of not only Burton and Trial Counsel's advice, but also because "defendant was fully advised as to the concept of 'acting-in-concert' as early as his first Burglary conviction in 1983." A013–15. The Appellate Division affirmed the hearing court's denial of Petitioner's § 440.10 motion on October 13, 2011, A003–05, and the Court of Appeals denied leave to appeal on March 6, 2012, A001.

## II. Procedural History

On February 25, 2013, Petitioner filed the instant petition pursuant to 28 U.S.C. § 2254 (the "Petition"). On August 29, 2014, Judge Ellis issued the Report, which recommended that this Court deny the Petition. After determining that Petitioner had timely filed his Petition within the statute of limitations contained in the Antiterrorism and Effective Death Penalty Act (AEDPA) and that Petitioner had properly exhausted his state remedies, it concluded that each of the arguments failed on the merits. *See* Report at 14–23. Petitioner objected to the Report on October 15, 2014 (hereinafter "Objections" or "Obj."). The State declined to file a response to Petitioner's Objections.

## STANDARD OF REVIEW

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The court must undertake a *de novo* review of those portions to which specific objections are made, but may accept portions of a report to which no objections are filed as long as those portions are not "clearly erroneous." *Gomez v. Brown*, 655 F. Supp. 2d 332, 341 (S.D.N.Y. 2009). "To the extent, however, that the party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Harden v. LaClaire*, No. 07-CV-4592 (LTS), 2008 WL 4735231, at *1 (S.D.N.Y. Oct. 27, 2008) (collecting cases).

## DISCUSSION

Petitioner objects to the Report's conclusion "that the Appellate Division 'was not unreasonable in accepting the trial court's finding that [Counsel] advised Martinez as to the law, the plea and the risk of not accepting the plea.'" Obj. at 14 (quoting Rpt. at 20). In particular, he

claims that (1) the Report ignored Trial Counsel's testimony that he was aware that Petitioner did not understand the law of accessorial liability; and (2) the Report unreasonably concluded that Petitioner received effective assistance of counsel with regard to the plea offer. Obj. at 14, 18. To meet his burden on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that counsel's representation "fell below an objective standard of reasonableness"; and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). In evaluating the first prong in a habeas case, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005), "enhanced by the added hurdle posed by the highly deferential review accorded state court adjudications under the Antiterrorism and Effective Death Penalty Act of 1996." *Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir. 2003).

Under AEDPA, state court legal findings cannot be overturned unless the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," *Williams v. Taylor*, 529 U.S. 362, 375–76 (2000), and factual findings cannot be overturned unless they were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *Cortijo v. Bennett*, 293 F. App'x 794, 796 (2d Cir. 2008). *See* 28 U.S.C. § 2254(d)(1)–(2). This standard "is 'difficult to meet:' To obtain habeas corpus relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Mertish v. Lancaster*, 133 S. Ct. 1781, 1786–87 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011)).

I.  **Accomplice Liability**

Petitioner first argues that Trial Counsel was ineffective for failing to correct his misunderstanding that he could not be convicted of burglary because he never entered the Apartment. The Court disagrees. Even assuming a counsel's failure to correct a defendant's misapprehension of the law could constitute ineffective assistance in certain circumstances, it does not do so here, where Trial Counsel instructed Petitioner on the elements of the crime, attempted to correct his mistaken "layman's view" of accessorial liability, worked hard to obtain a favorable plea offer, and strenuously urged him to accept it. Further, because this court declines to disturb the state court's factual finding that Petitioner knew that he could be convicted of burglary despite never entering the Apartment, any alleged deficiency in Trial Counsel's advice did not alter Petitioner's decision to reject the State's plea offer, and therefore, did not prejudice him.

A.  **Trial Counsel's Conduct**

Petitioner argues that the state court and the Report "ignored" a central portion of Trial Counsel's testimony that "unequivocally establishes that Trial Counsel was aware that [Petitioner] did not understand the law of accessorial liability . . . when he rejected the favorable plea offer." Obj. at 10, 14. In support of his argument, Petitioner highlights the following two portions of the § 440.10 hearing transcript.

> Q: Can I—during this time prior to getting a plea offer from the [State] was it your understanding from [Petitioner] that he thought he couldn't get convicted of burglary if he hadn't been inside the dwelling?
>
> A: Yes, that's absolutely what he thought.
>
> Q: And did he actually tell you that's what he thought?
>
> A: Yes, he kept saying to me I was never in the apartment. I made a mistake. I foolishly helped this guy. I helped carry the safe. You had the safe that was taken from the apartment in his apartment. That's where they found it.

8

> Q: And did he tell you again prior to the trial that he understood he can't be convicted of burglary if he was never physically inside the apartment?
>
> A: No, he didn't tell me he couldn't get convicted of burglary. He said, he told me consistently I was never inside the apartment. That's what he told me.
>
> Q: And he felt that mattered?
>
> A: Oh, yeah, he thought that matter[ed], right.

A157–58.

> Q: Do you recall you testified earlier that there were times where you understood from [Petitioner] that it was his understanding that he couldn't be convicted of burglary unless he was physically in the victim's apartment; do you recall that testimony?
>
> A: I recall the testimony, and it was his feeling that I was never in any apartment, I'm not guilty of a burglary.
>
> Q: In fact he had that understanding all up through his sentencing in the case, right?
>
> A: I don't know what his understanding was but that's his words. He felt he wasn't guilty of burglary because he was never in the apartment and, okay that's a reasonable layman's assumption.

A188–89.

Notwithstanding Petitioner's protestations to the contrary, this testimony alone cannot overcome the state court's conclusion that Trial Counsel "adequately counseled" Petitioner as to the law of accomplice liability. Counsel's subsequent testimony confirmed that, upon hearing Petitioner express his "layman's assumption," he attempted to correct it. When asked if he told Petitioner "that he was mistaken in his laymen's view," Trial Counsel responded, "Well, I'm sure we discussed that fact. I'm sure I discussed with him the fact that [if] he aided or abetted someone to go into the apartment that he could be liable for their actions . . . ." A190.

...

Petitioner cannot identify, and the Court is unaware of, any Supreme Court precedent requiring an attorney to do more than inform a competent client of the law in a language and manner he can understand. "[T]here is no duty for an attorney to insure that his client understands all that he is told. Indeed, such a standard would present obvious difficulties, not the least of which is that counsel has no way to measure what someone does or does not understand." *Kratsas v. United States*, 102 F. Supp. 2d 320, 325 (D. Md. 2000) *aff'd*, 9 F. App'x 107 (4th Cir. 2001) (internal citation omitted); *see also Bowens v. United States*, No. 04-CR-0048 (JSR), 2012 WL 3241671, at *8 (S.D.N.Y. Aug. 10, 2012) ("The issue in assessing ineffective assistance of counsel, however, is not what [the petitioner] understood *per se* but rather whether counsel's advice to [the petitioner] fell below an objective standard of reasonableness.").

Although it is true that in certain cases, issues that may affect comprehension such as age, language barriers, or mental limitations can implicate the effectiveness of legal assistance where the impediment creates a barrier to communication, *see, e.g., Daniel v. Thigpen*, 742 F. Supp. 1535, 1556 (M.D. Ala. 1990) ("One of the basic duties discussed in *Strickland* is the duty to discuss important decisions with the client. As a result of either the petitioner's inability to communicate with his lawyers or their continued doubts about his mental competence, the petitioner's lawyers consulted with him very little during the trial, if at all . . . ."); *Jie Lin v. Ashcroft*, 377 F.3d 1014, 1024 (9th Cir. 2004) (finding ineffective assistance where attorney did not communicate at all with underage non-native English speaking client), Petitioner has identified no such issues here.

The only case Petitioner cites in which a habeas petition was granted because an attorney knew or should have known that his client did not understand counsel's legal advice is *Carrion v. Smith*. Obj. at 17 (citing *Carrion v. Smith*, 644 F. Supp. 2d 452 (S.D.N.Y. 2009) *aff'd*, 365 F. App'x 278 (2d Cir. 2010)). In that case, the court found ineffective assistance of counsel, in part,

because the petitioner's testimony—which the court credited—established that he was unable to fully comprehend a plea offer described by his attorney only once while the petitioner recovered from gunshot wounds in the hospital. *See Carrion*, 644 F. Supp. 2d at 468–69. There, the court also found other impediments to comprehension, including potential mental health issues and a "limited understanding of English and of the criminal justice system in general." *Id.* at 469. Moreover, the court cited as an independent basis for its ineffectiveness determination the attorney's complete failure to describe the potential sentence in advance of the plea, *id.* at 468, and it was this basis that was upheld on appeal, *see Carrion v. Smith*, 365 F. App'x 278, 283 (2d Cir. 2010). Here, Petitioner does not allege mental health issues, a language barrier, or an unfamiliarity with the criminal justice system.

Upon hearing the testimony of Petitioner and his counsel, the state court concluded that Trial Counsel "adequately counseled" Petitioner that he could be convicted under an acting-in-concert theory by explaining the elements of burglary, attempting to clarify any misunderstanding, and urging him to accept a favorable plea. This Court cannot say that determination was unreasonable.

**B.    Prejudice**

Even if Trial Counsel had failed to correct Petitioner's purported misunderstanding of the law in a manner that fell below an objective standard of reasonableness, Petitioner was not prejudiced because the state court found, and the record establishes, that he was aware of the possibility that he could be convicted of burglary even though he never personally entered the Apartment. In other words, because Petitioner had knowledge of his exposure as an accessory under New York criminal law, he was not prejudiced by his attorney's alleged failure to explain accomplice liability to him yet again.

11

The state court found that Petitioner had "knowledge" of accomplice liability and "decline[d] to credit the testimony of the [Petitioner] that he never knew . . . that he could be liable for Burglary even though he never physically entered the apartment."[3] A015. In support of its conclusion, the state court noted that Petitioner was "made aware of his individual culpability for the Burglary" from three different sources. A015. First, Trial Counsel "adequately counseled" Petitioner on the law of accomplice liability. *Id.* The record confirms that Trial Counsel informed Petitioner of this fact at least twice: once when he initially described the charges, and once when he tried to correct Petitioner's "layman's assumption." A153, A190. Second, Petitioner himself acknowledged that his prior attorney Katherine Burton explicitly informed him that he could face life imprisonment if convicted at trial "even if [he] never stepped foot inside the apartment."[4] A015, A075. And finally, the state court found that Petitioner "was fully advised as to the concept of 'acting-in-concert' as early as his first Burglary conviction in 1983 where he was convicted under that theory."[5] A015. In light of this evidence, the state court's conclusion was not "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *Whitaker v. Meachum*, 123 F.3d 714, 715 n.1 (2d Cir. 1997)

---

[3] To the extent that Petitioner argues that this finding does not explicitly state that Petitioner *understood* "acting-in-concert" liability, "[t]he Supreme Court has repeatedly held that a habeas court may apply the presumption of correctness to factual findings . . . that were not explicitly stated by the trial judge." *Reyes v. Greiner*, 340 F. Supp. 2d 245, 256-57 (E.D.N.Y. 2004) *aff'd*, 150 F. App'x 77 (2d Cir. 2005) (citing *Wainwright v. Witt*, 469 U.S. 412, 430 (1985)); *see also Piper v. Portuondo*, 82 F. App'x 51, 53 (2d Cir. 2003) ("Implicit in the trial court's conclusion that the police procedures were not suggestive is a finding that this testimony was credible, which factual finding is subject to a 'presumption of correctness.'").

[4] In a footnote, Petitioner objects to the relevance of his first attorney's admonition that conviction was possible on an accomplice theory because the attorney provided the advice pre-indictment. Obj. at 22 n.8. Yet the record does not establish, as Petitioner suggests, that the attorney told Petitioner he could be convicted only if *indicted* as an accomplice.

[5] In the same footnote, Petitioner challenges the relevance of the 1983 case, arguing that no evidence suggests that the case involved circumstances similar to this one. Obj. at 22, n.8. This argument is unpersuasive, however, as irrespective of the similarities in the conduct, the theory of culpability—accomplice liability—remained the same.

("A state court's findings of fact are entitled to a 'presumption of correctness' on federal collateral review unless those findings are not 'fairly supported by the record' as a whole.").

By contrast, the only credible evidence in the record suggesting that Petitioner did not comprehend his potential liability came from Trial Counsel, who stated that "it was [Petitioner's] feeling that I was never in any apartment, I'm not guilty of a burglary." A188. Not only did Counsel attempt to correct this mistaken "layman's view," however, but the state court was not required to accept Trial Counsel's belief about the facts, and its contrary conclusion was not unreasonable in light of the evidence establishing Petitioner's actual knowledge. *See Gutierrez v. Ricks*, No. 02-CV-3780 (BSJ), 2002 WL 31360417, at *10 (S.D.N.Y. Oct. 21, 2002) ("This Court . . . may not second-guess the factfinder by choosing [the petitioner's] version of events over the prosecution's."). Indeed, the state court was in possession of facts apparently unknown to Trial Counsel, such as the advice provided by Burton, and it was able to observe Petitioner's live testimony about the issue. *See Smithwick v. Walker*, 758 F. Supp. 178, 184 (S.D.N.Y. 1991) *aff'd*, 948 F.2d 1278 (2d Cir. 1991) ("The findings of the state court are presumptively correct and entitled to a high degree of deference as that court was in the best position to view the credibility of the witnesses and all of the facts as they were adduced."); *see also United States v. Milbrand*, 58 F.3d 841, 844 (2d Cir. 1995) ("Assessment of the credibility of witnesses is peculiarly within the province of the trier of fact and is entitled to considerable deference.").

While in other cases, a defendant's own testimony might aid in deciphering the extent to which he comprehended legal concepts, no credible testimony exists here. After observing Petitioner, the state court explicitly "decline[d] to credit" his testimony: (i) "that he never knew (before or during [Counsel's] representation) that he could be liable for Burglary even though he never physically entered the apartment," and (ii) that he lacked "familiarity with and understanding

of the concept of 'acting-in-concert.'" A014. Petitioner has not challenged these credibility findings nor asked this Court to rely on his testimony. *See* Obj. at 14 ("[Petitioner] is not asking the Court to disturb any of the state courts' credibility determinations."); *see also* Oral Arg. Tr. at 7–8.

Because the state court found that Petitioner comprehended the legal concept of acting-in-concert, A015, and that finding was not unreasonable, Trial Counsel's alleged failure to again explain accomplice liability to Petitioner after previously having done so had no influence on the outcome of the proceedings and did not prejudice Petitioner.

## II. The Plea Offer

Petitioner also argues that the state court erroneously concluded that Trial Counsel adequately advised him with respect to the plea deal. Obj. at 18 (citing Rpt. at 20). The record, however, fully supports the state court's finding—as adopted by the Report—that Trial Counsel "did all that was possible to obtain a favorable plea offer for the defendant, and to get him to seriously consider and accept the offer." A016.

The evidence presented to the state court established that Trial Counsel diligently pursued a favorable plea on Petitioner's behalf and then attempted to persuade him to accept the plea. Among other things, Trial Counsel testified that he told Petitioner the risks of refusing the plea would be "tremendous," that proceeding to trial was "not worth the risk," A192, and that he "[had] to take this offer," A167. He further testified that he "told [Petitioner], with his daughter next to him, you'll dance at your daughter's wedding if you take the plea. Otherwise, they [will] visit you in prison for the rest of your life if you lose at trial." A012. ADA Cohen corroborated that Petitioner was told "he would walk one of the daughters down the aisle at their wedding" if he took the plea. A026. Cohen also recalled that Trial Counsel informed the court that "I talked to

my client and I told my client that he should be taking this offer and he's not taking it." A027. Even Petitioner testified that Counsel ultimately recommended that he take the plea, in addition to the trial judge. A062–63. Given this evidence, the state court reasonably concluded that Trial Counsel did not act in a manner "so deficient that it falls outside the wide range of professionally competent assistance." *Kovacs v. United States*, 744 F.3d 44, 50 (2d Cir. 2014) (internal quotations and citations omitted).

Petitioner emphasizes that Trial Counsel initially characterized the plea as "bad news" and waited until the eve of trial to encourage acceptance of the plea with sufficient enthusiasm. Obj. at 19–21. Neither of these facts, however, even if assumed to be true, calls into question the strength of Trial Counsel's ultimate—and vehement—recommendation of the plea. As Judge Ellis reasoned, neither professional codes of conduct nor relevant case law support the position that counsel's delay or changed mind may be grounds for an ineffective assistance claim.[6] Rpt. at 20–21. In light of Trial Counsel's urging that Petitioner accept the State's plea offer, the state court finding of adequate representation was not "objectively unreasonable." *Henry*, 409 F.3d at 61.

---

[6] The cases Petitioner cites do not compel a different result. *See* Obj. at 17. In *Pham v. United States*, 317 F.3d 178 (2d Cir. 2003), and *Boria v. Keane*, 99 F.3d 492 (2d Cir. 1996), the attorneys in question failed to provide any advice on the merits of the pleas at issue. *Pham*, 317 F.3d at 180; *Boria*, 99 F.3d at 497. Similarly, in *Davis v. Greiner*, 428 F.3d 81 (2d Cir. 2005), counsel neglected to advise his client that by accepting a plea bargain he would waive his right against self-incrimination, *id.* at 88, and in *United States v. Gordon*, 156 F.3d 376 (2d Cir. 1998), counsel admitted that he altogether failed to inform his client that sentences for the twelve counts with which he was charged could be served consecutively, *id.* at 380. Finally, in *Purdy v. United States*, 208 F.3d 41 (2d Cir. 2000), the court found counsel *effective* even though the attorney "never advised [the defendant] to plead guilty in so many words." *Id.* at 47. In this case, the record supports the conclusion that Trial Counsel not only told Petitioner about all aspects of the plea offer, but urged acceptance emphatically, even if it was not when the offer was originally made.

## CONCLUSION

For the forgoing reasons, the Petition is denied and the action is dismissed with prejudice.

The Clerk of the Court is respectfully directed to close the case.

SO ORDERED.

Dated:     January 11, 2016
               New York, New York

                                            Ronnie Abrams
                                            United States District Judge